# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA

IN RE: COMPUMEDICS USA DATA SECURITY INCIDENT LITIGATION

Case No. 3:25-cv-00479

## MEMORANDUM IN SUPPORT OF DEFENDANT COMPUMEDICS USA'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I. PLAINTIFFS' ALLEGATIONS ...................................................................................1

II. LEGAL ARGUMENT ...........................................................................................3

    A. PLAINTIFFS LACK STANDING TO SUE COMPUMEDICS ......................3

        1. Standard of Review. ........................................................................3

        2. Plaintiffs Have Not Alleged Concrete Injuries Traceable to the Incident. ...........................................................................................4

            a. Plaintiffs Have Not Alleged Actual Misuse............................4

            b. Plaintiffs allege No Other Concrete or Traceable Injury........8

        3. Plaintiffs Have Not Alleged Any Injury That is "Fairly Traceable" to Compumedics's Conduct. ...........................................11

    B. THE COMPLAINT SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6) ..........................................................................................................12

        1. Standard of Review. ........................................................................12

        2. Plaintiffs Have Failed to Plausibly Allege Damages, a Required Element of Each of Their Claims. ....................................................13

        3. Plaintiffs' Negligence Claims Should Be Dismissed. ........................15

            a. Plaintiffs Have Failed to Plead a Common Law Duty owed to them by Compumedics.............................................15

            b. Plaintiffs Have Failed to Plead a Statutory Duty...................17

         4. Plaintiffs' Breach of Implied Contract Claim Fails..........................18

            a. Plaintiffs Have Not Pled the Terms of an Implied Contract Between Plaintiffs and Compumedics...................19

            b. Plaintiffs' Breach of Implied Contract Claim Also Fails for Lack of Consideration. ....................................................22

        5. Plaintiffs' Breach of Third-Party Beneficiary Contract Claim Should be Dismissed....................................................................23

ii

6.  Plaintiffs' Unjust Enrichment Claims Should Be Dismissed. .........24

III.  CONCLUSION .................................................................................................. 25

iii

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Compumedics USA ("Compumedics") respectfully moves this Court to dismiss Plaintiffs' Consolidated Class Action Complaint ("Complaint" or "CAC") (Dkt. No. 8) because Plaintiffs lack standing to assert their claims and they fail to allege sufficient facts to plausibly state any claim for relief.

## I.      PLAINTIFFS' ALLEGATIONS

Compumedics provides diagnostic and research technologies for sleep disorders, which are used by certain health care providers for the administration of sleep studies. CAC ¶ 4. On March 22, 2025, Compumedics became aware of suspicious activity related to certain computer systems. CAC ¶ 45, Ex. A. Compumedics immediately launched an investigation to secure its network and determine the nature and scope of the activity. *Id.* at Ex. A. Through its investigation, Compumedics learned that it joined the long list of companies that have been victimized by cyberattacks and determined that an unauthorized party accessed certain Compumedics systems between February 15, 2025, and March 23, 2025, and reviewed or copied some files ("Incident"). *Id.* Compumedics conducted a comprehensive review of the data determined to be at risk, what sensitive information was contained therein, and to whom the information related. *Id.*

Plaintiffs allege that they are either current or former patients of health care providers who used Compumedics's technologies in sleep study clinics. CAC ¶¶ 176, 187,

198, 209, 219, 229.[1] Plaintiffs allege that they were required to provide their personal information to their healthcare provider, who then shared the personal information with Compumedics for its technologies. *Id.* Other than Plaintiff Ward (who alleges he believes his information was impacted based on "information and belief"), all Plaintiffs claim that, following the Incident, they were notified that their personal information may have been impacted in the Incident and that they have been injured as a result. *Id.* at ¶¶ 180, 191, 202, 213, 223, 233; Ex. A. Less than *one* month after receiving notice, and despite experiencing no misuse whatsoever, Plaintiffs sued Compumedics in cookie-cutter complaints alleging a litany of generic injuries that they speculate are linked to this Incident. Plaintiffs do not allege any instance of actual identity theft, medical fraud, or attempted fraud. The majority of Plaintiffs allege only boilerplate, conclusory injury allegations falling into four generic categories: (1) lost time *(id.* at ¶¶ 181, 192, 203, 214, 224, 234) (alleging that Plaintiffs have spent time "dealing with the Data Breach" and have lost "valuable time" that they "would have been spent on other activities"); (2) increased risk of future harm *(id.* at ¶¶ 182, 193, 204, 215, 225, 235); (3) dark web publication *(id.* at ¶¶ 183, 194, 205, 216, 226, 236); and (4) fear, anxiety, and stress *(id.* at ¶¶ 185, 196, 207, 218, 228, 238).

---

[1] No Plaintiff alleges that they are a North Carolina resident. CAC ¶¶ 15-20, However, as this Court has previously stated, "a district court must apply the choice-of-law rules of the state in which it sits." *Capiau v. Ascendum Mach., Inc.*, No. 3:24-CV-00142-MOC-SCR, 2024 WL 3747191, at *9 (W.D.N.C. Aug. 9, 2024). This Court sits in North Carolina, which uses the *lex loci delicti* choice of law principle, requiring courts to apply the law of "the state where the last act occurred giving rise to the injury." *Id.* For purposes of this Motion, Compumedics will assume that North Carolina law applies because the last alleged act giving rise to Plaintiff's' alleged injuries occurred in North Carolina, where Compumedics is headquartered and where the Incident transpired. *Id.*; CAC ¶¶ 2, 21, 24, 25. By applying North Carolina law to this Motion, Compumedics does not waive its right to raise choice of law issues in future proceedings.

No Plaintiff alleges any "specific" harm injuries: they do not allege they have experienced any out-of-pocket loss following the Incident, nor do they claim they experienced any misuse, fraud, attempted fraud, or any identity theft. Plaintiffs Hill, Blake, and Lockwood attempt to allege "specific" harm injuries in the receipt of spam calls, texts and emails, and for Plaintiff Blake the receipt of a fraudulent invoice from Paypal, but do not allege specific facts demonstrating any out-of-pocket loss or any misuse, fraud, attempted fraud, or any identity theft *as a direct result of this Incident. Id.* at ¶¶ 186, 197, 207. None of these Plaintiffs allege which phone numbers or email accounts were compromised nor do Plaintiffs allege that they provided this information to their health care provider or Compumedics. *Cf.* ¶ 45, Ex. A (alleging only certain information that may have been impacted which does not include phone numbers or emails).

Plaintiffs bring this action on behalf of themselves, and on behalf of a nationwide putative class, inclusive of all individuals whose information "may have been compromised in the Data Breach, including all individuals who received a Notice Letter." *Id.* at ¶ 240. Plaintiffs assert four causes of action: (1) negligence and negligence *per se*; (2) breach of implied contract; (3) breach of third-party beneficiary contract; and (4) unjust enrichment. *Id.* at ¶¶ 252-330.

## II.   LEGAL ARGUMENT

## A.   PLAINTIFFS LACK STANDING TO SUE COMPUMEDICS

### 1.   Standard of Review.

Article III of the Constitution limits federal jurisdiction to "Cases" and "Controversies." U.S. Const. Art. 3, § 2, cl 1. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Standing requires the plaintiff to

3

have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and, at the pleading stage, must "clearly . . . allege facts demonstrating" each element. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490 (1975)). "In a class action, [courts] analyze standing based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). In assessing a Rule 12(b)(1) facial challenge to standing, courts accept factual allegations as true but "do not [ ] apply the same presumption of truth to 'conclusory statements' and 'legal conclusions' contained in [the] complaint." *Id.* at 270 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Legal conclusions pleaded as factual allegations, "unwarranted inferences," "unreasonable conclusions," and "naked assertions devoid of further factual enhancement" are not entitled to the presumption of truth. *Wikimedia Found. v. Natl. Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017)(citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

### 2. <u>Plaintiffs Have Not Alleged Concrete Injuries Traceable to the Incident.</u>

#### a. Plaintiffs Have Not Alleged Actual Misuse

The Fourth Circuit has repeatedly held that the "mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 621 (4th Cir. 2018); *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 244 (4th Cir. 2023) ("[B]eing subjected to a data breach isn't in and of itself sufficient to establish Article III standing without a nonspeculative, increased risk of identity theft."); *Beck*, 848 F.3d at 275 ("[T]he

mere theft of . . . items" containing personal information is too speculative). In the context of class actions alleging claims arising from a data breach, this Court and courts within the Fourth Circuit have held that plaintiffs must allege facts that show "*actual misuse* of [their] [personal information] disclosed by the data breach." *Capiau v. Ascendum Mach., Inc.*, Case No. 3:24-cv-00142-MOC-SCR, 2024 WL 3747191, at *4 (W.D.N.C. Aug. 9, 2024) (emphasis in original) (citing *Beck*, 848 F.3d 262, 272) ("Actual misuse is the keystone of Article III injury in Fourth Circuit data breach case law."); *Panighetti v. Intelligent Bus. Sols., Inc.*, No. 1:23CV209, 2025 WL 1796454, at *4 (M.D.N.C. June 30, 2025) (dismissing data breach case because no allegations of identity theft or fraud); *Krohm v. Epic Games, Inc.*, 408 F. Supp. 3d 717, 720 (E.D.N.C. Oct. 1, 2019) (dismissing data breach case because no allegations of actual misuse); *Stamat v. Grandizio Wilkins Little & Matthews, LLP*, No. CV SAG-22-00747, 2022 WL 3919685, at *1, 6 (D. Md. Aug. 31, 2022) (dismissing data breach case despite an allegation that the plaintiff's personal information was sold on the dark web because the plaintiff did not allege any instance where his personal information has been fraudulently used to open a credit card, make fraudulent charges, or used in such a way to lower his credit score).

"One way for a data breach plaintiff to establish actual misuse—and thus Article III injury—is to credibly plead 'that their data [has] been used in a fraudulent manner' as a consequence of the breach." *Capiau*, 2024 WL 3747191, at *4. For example, District courts in North Carolina have held that plaintiffs have alleged actual misuse where a plaintiff alleges that, following the alleged breach, they experienced fraudulent credit card charges, had an uptick in targeted spam messages purporting to be from the defendant, or experienced adverse impacts to their credit score. *See, id.* at *2 (plaintiff alleged a spike in messages from persons pretending to be the defendant's CEO); *Farley v. Eye Care*

*Leaders Holdings, LLC*, No. 1:22-CV-468, 2023 WL 1353558, at *3-4 (M.D.N.C. Jan. 31, 2023)(standing from allegations of fraudulent charges and a credit score that "inexplicably plummeted").

Spam, standing alone, is not an injury in fact, but can sometimes suggest actual misuse when there's a clear indication of alleged traceability to the breach such as when the messages are purportedly from a defendant's CEO. *See Capiau*, 2024 WL 3747191, at *4 (sufficient allegations of actual misuse due to the defendant's data breach because the threat actors were impersonating the defendant's CEO); *but see McCombs v. Delta Grp. Electronics, Inc.*, 676 F. Supp. 3d 1064, 1074 (D. N.M. 2023) ("Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications.") (collecting cases). A "bare allegation regarding an increase in spam calls and/or emails is [not] sufficient to establish Article III standing." *Stuart v. Kyocera AVX Components Corp.*, No. 23-6087, 2025 WL 745903, at *8 (D.S.C. Mar. 7, 2025). This is especially true when there are no allegations that the plaintiff's email address or phone number were exposed in the Incident. *See Holmes,* 2023 WL 4183380, at *6 (plaintiffs did not allege impacted data included cell phone numbers and so there are no "facts that causally connect this uptick in spam to [defendant].").

Here, unlike in *Capiau*, no Plaintiff alleges any actual misuse fairly traceable to this Incident at all. Plaintiffs Hill, Blake, and Lockwood, attempt to allege some form of misuse, but those allegations fail because, as pled, they are not sufficient injuries and even if they were, they are not fairly traceable to this Incident. For example, Plaintiff Hill vaguely alleges that she has "experienced suspicious spam calls and texts using the Private Information exposed in the Data Breach" including "constant calls from an unknown

6

actor using Plaintiff Hill's Private Information regarding a loan application she did not apply for, which Plaintiff Hill began receiving shortly after the Data Breach." CAC ¶ 186. These allegations are far too vague, conclusory, and barebones to confer standing because Plaintiff Hill does not allege facts regarding these spam calls and texts that would support an inference that Plaintiff Hill's information has actually been misused as a result of *this* Incident. *Cf. Capiau* (allegations of spam were sufficient because the threat actors were impersonating the defendant's CEO). Plaintiffs' naked allegation that the calls and texts "us[ed] the Private Information exposed in the Data Breach" is too conclusory. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 260 (4th Cir. 2009) (holding that "bare assertions devoid of further factual enhancement . . . are not entitled to an assumption of truth").

Further, Plaintiff Hill does not allege that her phone number or emails were even involved with this Incident, so any suggestion that the increase in spam calls, texts, and emails is traceable to Compumedics lacks any basis in fact. *See* CAC ¶¶ 45, 180; Ex. A. In addition, Plaintiff Hill's allegation that she is receiving phone calls for a loan application she did not apply for falls short. Plaintiff Hill does not allege that a fraudulent loan application was submitted in her name, only that she received *spam* calls regarding "a loan application she did not apply for[,]" (*id.*). This is not a sufficient allegation of misuse.

Similarly, Plaintiff Blake alleges that she has "experienced suspicious spam calls and texts using the Private Information exposed in the Data Breach" including "annoying text messages, spam calls, and emails asking her to verify her credit and debit cards, and fraudulent invoices from Paypal for services and products Plaintiff Blake did not buy, which Plaintiff Blake began receiving shortly after the Data Breach." *Id.* at ¶ 197. As stated above, an allegation of receiving *spam* regarding payment card verification and

fraudulent invoices is not akin to experiencing fraudulent activity itself. Even assuming it is, like Plaintiff Hill, Plaintiff Blake does not even allege that her phone number, emails, payment card or Paypal information were even involved with this Incident. *See* CAC ¶¶ 45, 191; Ex. A. None of the information potentially impacted could be used for any of the misuse Plaintiff Blake alleges, so these allegations cannot be fairly traced to this Incident. Like Plaintiff Hill, Plaintiff Blake is missing the nexus connecting any of this spam to this Incident.

Finally, Plaintiff Lockwood alleges that he "has experienced suspicious spam calls and texts using the Private Information exposed in the Data Breach, which Plaintiff Lockwood began receiving shortly after the Data Breach." CAC ¶ 207. Even if we assume that a bare allegation regarding an increase in spam calls, texts, or emails is sufficient to establish Article III standing (it is not), any alleged increase in spam is not traceable to this Incident because Plaintiff Lockwood does not allege that his phone number or email was involved with this Incident. *Caipau*, 2024 WL 3747191, at *4; CAC ¶ 202.

In sum, Plaintiffs' allegations about the source and reasons behind their alleged increase in spam calls and emails are speculative and do not support an inference of actual misuse resulting from this Incident. Nor do Plaintiffs plausibly allege a genuine nexus between the spam and the ransomware attack, which did not involve Plaintiffs' email addresses or telephone numbers. Because Plaintiffs do not plausibly allege any actual misuse resulting from this Incident, their Complaint should be dismissed.

### b. <u>Plaintiffs allege No Other Concrete or Traceable Injury</u>

#### (1) **Absent Actual Misuse, Plaintiffs' Alleged Increased Risk of Future Harm Is Not Sufficient to Establish Standing.**

Plaintiffs each allege that they are at an "increased risk of identity theft and fraud

for years to come." CAC, ¶¶ 182, 193, 204, 215, 225, 235. Even though the Complaint contains conclusory allegations that Plaintiffs' information was "stolen by hackers and posted on the dark web," (*id.* at ¶ 10), Plaintiffs do not allege any instance of *actual* identity theft, medical fraud, or even attempted fraud. This deficiency is fatal to Plaintiff's claims. *See Holmes*, 2023 WL 4183380, at *4 ("Because the plaintiffs have not alleged any misuse of their PI or resulting harm from . . . their driver's license numbers appearing on the dark web, this alleged injury simply echoes the claim of heightened risk of identity theft. The plaintiffs have not adequately pleaded an injury-in-fact."); *Podroykin v. Am. Armed Forces Mut. Aid Ass'n*, 634 F. Supp. 3d 265, 270 (E.D. Va. 2022) (no increased risk of future harm where plaintiff did not allege actual misuse of their information).

Because Plaintiffs' information was not misused, and Plaintiffs have no reason to believe any misuse is certainly impending, Plaintiffs' Complaint should be dismissed.

(2) **Plaintiffs' Alleged Mitigation Efforts Do Not Support Standing.**

Plaintiffs next each allege that they have "made reasonable efforts to mitigate the impact" of the Incident and that they have spent time "dealing with" the Incident by "reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud." CAC, ¶¶ 181, 192, 203, 214, 224, 234. But Plaintiffs' alleged mitigation efforts are not sufficient to establish standing under *Clapper*. The Supreme Court held that where plaintiffs have not otherwise suffered an injury-in-fact, they "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 133 S.Ct. at 1151. The Court reasoned: "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure

based on a nonparanoid fear." *Id*. The Fourth Circuit has applied *Clapper* in the data breach context, holding that without an imminent threat, "the cost of measures to guard against identity theft, including the costs of credit monitoring services . . . do[es] not constitute an injury-in-fact." *Beck*, 848 F.3d at 276.

Here, Plaintiffs do not even allege that they incurred any out-of-pocket expenses attempting to mitigate the Incident, just that they each spent time "researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud[,]" and that they now "monitor[] [their] financial and credit statements multiple times a week and ha[ve] spent hours dealing" with the Incident. CAC, ¶¶ 181, 192, 203, 214, 224, 234. These allegations do not support Article III standing. *Holmes*, 2023 WL 4183380, at *5 ("Finally, the plaintiffs' time spent paying close attention to their financial documents following the Data Breach does not constitute an injury-in-fact. Even if the plaintiffs had alleged that they had spent money on protective services, the Fourth Circuit has held that expenses incurred on preventative or mitigative measures do not constitute an injury.") (citing *Beck*, 848 F.3d at 276).

### (3) Plaintiffs Cannot Establish Injury Through Their Emotional Distress Allegations.

Next, Plaintiffs each make the bare allegation that they have experienced "fear, anxiety, and stress" as a result of the Incident. CAC, ¶¶ 185, 196, 207, 218, 228, 238. The Fourth Circuit, however, has decidedly held emotional distress following a data breach does not constitute a cognizable injury-in-fact. *Beck*, 848 F.3d at 272 ("We also reject the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient to confer Article III standing."). "While emotional injury can constitute actual harm sufficient to confer

Article III standing, 'bare assertions of emotional injury' will not do." *Capiau*, 2024 WL 3747191, at *7 (citation omitted); *Holmes*, 2023 WL 4183380, at *5 ("Because the plaintiffs plead only a bare assertion of emotional injury, they have not pleaded an injury-in-fact.") (cleaned up). Plaintiffs' emotional distress allegations do not support standing.

### 3. **Plaintiffs Have Not Alleged Any Injury That is "Fairly Traceable" to Compumedics's Conduct.**

The Complaint also fails to satisfy the second essential element of Article III standing: that the alleged injury to Plaintiff be "fairly traceable" to Compumedics's conduct. *See Holmes*, 2023 WL 4183380, at *3 ("[S]tanding requires a causal connection between the alleged injury and the defendant's action."). The Supreme Court has held that the traceability requirement is *not* met where a plaintiff "rel[ies] on speculation about the unfettered choices made by independent actors not before the court." *E.g., Clapper,* 133 S.Ct. at 1150 n.5 (quotation and citation omitted). The "fairly traceable" requirement of standing "is in large part designed to ensure that the injury complained of is 'not the result of the independent action of some third party not before the court.'" *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000) (quoting *Lujan*, 504 U.S. at 560)). That is exactly the situation before this Court as "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors before the courts and whose exercise of broad and legitimate discretion cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562. "Under these circumstances, 'it becomes the burden of the plaintiff to adduce *facts* showing that those choices have been or will be made in such a manner as to produce causation and

permit redressability of injury.'" *Friends for Ferrell Parkway*, 282 F.3d at 324 (emphasis added) (quoting *Lujan*, 504 U.S. at 562).

Plaintiffs Hill, Blake and Lockwood's assertions that spam communications are somehow traceable to the Incident are entirely speculative. Plaintiffs have not alleged that their phone numbers or Paypal account information were even compromised a part of the Incident. *See generally* Complaint. These omissions are further magnified by the allegations of the Complaint regarding the ubiquity of data breaches. *Id*. at ¶¶ 69 (alleging that cyberattacks against "institutions such as Defendant" are "frequent"); 70 (alleging the breach of "industry-leading companies" including Microsoft and Facebook); 72 (alleging that for "83% of companies, it's not if a data breach will happen, but when"). Additionally, Plaintiffs' Complaint alleges 3,205 separate instances of data incidents affecting 353,027,892 individuals. *Id*. at ¶ 74. Speculation that the cyber criminals intend to steal their identities because of this Incident is not enough, particularly given Plaintiffs allegations of the frequency of cyberattacks. *See Nemet Chevrolet*, 591 F.3d at 260 (holding that "bare assertions devoid of further factual enhancement . . . are not entitled to an assumption of truth"). Because Plaintiffs fail to allege any facts that the Incident was plausibly the sole instance of their information being allegedly compromised, their purported injures are not "fairly traceable" to Compumedics and insufficient to confer standing. *See Alvarez v. Becerra*, 2023 WL 2908819, at *3 (4th Cir. Apr. 12, 2023) (no standing because the alleged injury that resulted from the independent action of a third party not before the court "decidedly falls short.").

**B.**    **THE COMPLAINT SHOULD ALSO BE DISMISSED UNDER RULE 12(B)(6)**

    **1.**    **Standard of Review.**

A motion to dismiss tests "the legal sufficiency of the complaint." *Randall v. United*

12

*States*, 30 F.3d 518, 522 (4th Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility" requires factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. 544 at 556 (2007)). Although a complaint "does not need detailed factual allegations," they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544 at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. 662 at 678. Stated differently, courts do not accept as true "'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Kashdan v. George Mason U.*, 70 F.4th 694, 700 (4th Cir. 2023) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)); *see also ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir .2019).

2. <u>**Plaintiffs Have Failed to Plausibly Allege Damages, a Required Element of Most of Their Claims.**</u>

With the exception of Plaintiffs' unjust enrichment claim, each claim requires them to plausibly allege that Compumedics caused them to suffer actual damages. *Blackmon v. Tri-Arc Food Sys., Inc.,* 246 N.C.App. 38, 782 S.E.2d 741, 745 (N.C. App. 2016) (negligence); *Supplee v. Miller-Motte Bus. Coll., Inc.*, 239 N.C. App. 208, 216, 768 S.E.2d 582 (2015) (breach of contract).

Importantly, "the standard for alleging actual damages is generally higher than that for plausibly alleging an injury in fact." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13

(D.D.C. 2019), *appeal dismissed*, 969 F.3d 412 (D.C. Cir. 2020), *and on reconsideration in part*, Case No. 1:15-cv-00882-CRC, 2021 WL 311000 (D.D.C. Jan. 29, 2021); *Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) ("[O]ur holding that [p]laintiffs[] pled an injury-in-fact for purposes of Article III standing does not establish that they adequately pled damages for purposes of their state-law claims."). Courts within the Fourth Circuit have previously held that, to plausibly allege damages in the data breach context, plaintiffs must allege "that they suffered *monetary losses* in connection with *actual fraudulent charges*, including unauthorized charges on their accounts" stemming from the Incident. *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 402 (E.D. Va. 2020) (emphasis added). Here, Plaintiffs do not allege that they incurred any monetary losses because of any fraudulent activity that allegedly occurred after the Incident (because they do not allege any fraudulent activity at all), much less any loss that plausibly can be tied in some way to the Incident. Indeed, Plaintiffs' alleged "damages" are not cognizable losses; rather, they are seeking proposed remedies where no compensable loss exists. *See* CAC ¶¶ 252-330.

"The majority view is that general allegations of lost time, continued risk to plaintiff's personal data, and the danger of future harm are not cognizable injuries." *Griffey v. Magellan Health, Inc.*, 562 F. Supp. 3d 34, 45 (D. Ariz. 2021) (internal quotations omitted; collecting cases). Similarly, general allegations that a plaintiff's personal information has lost value are not enough to plausibly allege damages. *In re Capital One*, 488 F. Supp. 3d 374 at 403-04 ("Even assuming that Plaintiffs' PII has monetary value, Plaintiffs do not allege any facts explaining *how* their PII became less valuable as a result of the breach. . . . Plaintiffs have therefore failed to plausibly allege damages based on the lost or reduced value or their PII.") (emphasis in original).

14

Plaintiffs also allege that, because of the Incident, they now experience "fear, anxiety, and stress" as a result of the Incident. CAC, ¶¶ 185, 196, 207, 218, 228, 238. Because bare allegations of "fear," "anxiety," and "stress" are insufficient to confer standing, they cannot serve as the basis for recovering damages. *Capiau*, 2024 WL 3747191, at *7; *Attias*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019); *Krottner*, 406 F. App'x 129, 131 (9th Cir. 2010).

Because Plaintiffs have failed to allege any facts demonstrating they suffered a cognizable monetary loss, their Plaintiffs' negligence-based and contract-based claims should be dismissed. *See In re Capital One*, 488 F. Supp. 3d 374 at 402; *Blackmon*, 782 at 745; *Supplee*, 239 N.C. App. at 216.

### 3. Plaintiffs' Negligence Claims Should Be Dismissed.

#### a. Plaintiffs Have Failed to Plead a Common Law Duty owed to them by Compumedics.

Plaintiffs have failed to plead facts that could establish Compumedics owed them a legal duty under tort law related to data security. In fact, the only source of any purported obligations Plaintiffs cite to are contained in the alleged in the quoted, yet uncited, "Subscription Agreement" and "Business Associate Agreement" Compumedics had with Plaintiffs' health care providers. *See* CAC ¶¶ 35-40. To the extent Plaintiffs contend that these agreements are the source of Compumedics duty, the economic loss rule bars Plaintiffs from converting their contract claim into a tort claim. The economic loss rule prohibits recovery for purely economic loss in tort. *See, e.g., Beaufort Builders, Inc. v. White Plains Church Ministries, Inc.*, 246 N.C.App. 27, 783 S.E.2d 35, 39 (N.C. Ct. App. 2016). A "tort action must be grounded on a violation of a *duty* imposed by operation of law," not a violation of a duty arising purely from "the contractual relationship of the parties." *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164–65 (4th Cir.

2018) (emphasis in original). Thus, a "tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract." *Rountree v. Chowan Cty.*, 252 N.C.App. 155, 796 S.E.2d 827, 830 (N.C. Ct. App. 2017); *see also Severn Peanut*, 807 F.3d at 94-95 (dismissing negligence claim that "claim[ed] a remedy in tort for [the defendant's] breach of ... the very same duty as that underlying [the plaintiff's] breach of contract claim").

Plaintiffs have otherwise failed to plausibly allege Compumedics owed them a common law duty to protect their personal information from unauthorized third parties, a required element of their negligence claims. *Blackmon*, 782 S.E.2d at 745. As a general rule, there is no duty to warn or protect against criminal acts by third parties. *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 797 (2013). North Carolina courts, however, have acknowledged an exception to the general rule that there is no duty to protect another from a third party where there exists a "special relationship between the defendant and [a] third person which imposes a duty upon the defendant to control the third person's conduct; or a special relationship between the defendant and the injured party which gives the injured party a right to protection." *Doe v. U.S.*, 381 F. Supp. 3d 573, 603 (M.D.N.C. 2019) (citing *Scadden v. Holt*, 222 N.C. App. 799, 802, 733 S.E.2d 90, 92 (N.C. Ct. App. 2012)); *see also Stein v. Asheville City Bd. Of Educ.*, 360 N.C. 321, 626 S.E.2d 263, 268 (N.C. 2006). Special relationships, however, "arise only in narrow circumstances." *Bridges*, 366 N.C. at 541. North Carolina courts have found that the following special relationships establish affirmative duties beyond an ordinary standard of care: "(1) parent-child; (2) master-servant; (3) landowner-licensee; (4) custodian-prisoner; and (5) institution-involuntarily committed mental patient." *Doe*, 381 F. Supp.

3d at 603 (citing *King v. Durham Cty. Mental Health Developmental Disabilities & Substance Abuse Auth.*, 113 N.C. App. 341, 346, 439 S.E.2d 771, 774 (1994)).

Here, Plaintiffs allege no relationship between them and Compumedics—let alone a special one. They do not plausibly allege a special relationship between themselves, patients of health care providers, and Compumedics, the supplier of medical technology that their health care providers use, at all. No North Carolina case has found a special relationship between a supplier of medical technology and the individual who ultimately uses their products.

### b.    Plaintiffs Have Failed to Plead a Statutory Duty.

To the extent Plaintiffs allege that Compumedics owed and breached a statutory duty under either the Federal Trade Commission Act (the "FTC Act") or the Health Insurance Portability and Accountability Act ("HIPAA"), this argument fails as well.

To sue for negligence *per se* in North Carolina, a plaintiff must show, among other things, that the defendant violated a statute enacted for *public safety*. *Weddle v. WakeMed Health and Hospitals*, No. 22 CVS 13860, 2023 WL 8369786, at *3 (N.C. Super. Dec. 4, 2023). North Carolina precedent makes clear that "negligence *per se* applies only when the statute violated is a public safety statute." *Hardin v. York Mem'l Park*, 221 N.C. App. 317, 326, 730 S.E.2d 768 (2012); *see also Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 326, 626 S.E.2d 263 (2006) (same); *State Farm Mut. Auto. Ins. Co. v. Holland*, 324 N.C. 466, 475, 380 S.E.2d 100 (1989) (same). As the North Carolina Supreme Court has explained, "[a] safety statute or ordinance is one designed for the protection of life or limb and which imposes a duty upon members of society to uphold that protection." *State v. Powell*, 336 N.C. 762, 768–69, 446 S.E.2d 26 (1994).

Here, Plaintiffs' negligence *per se* claim is untenable because it is predicated upon violations of the FTC Act and HIPAA, and neither the FTC Act nor HIPAA are public safety laws designed to protect "life or limb." *See Williams v. Dukehealth,* No. 1:22-CV-727, 2024 WL 898051, at *11 (M.D.N.C. Mar. 1, 2024)(dismissing negligence *per se* claims in data breach because the relevant portions of HIPAA and the FTC Act could not "reasonably be read to relate to the protection of public safety.") Section 5 of the FTC Act targets unfair methods of competition and unfair or deceptive trade practices. *See* 15 U.S.C. § 45(a)(1). HIPAA has many purposes related to the health insurance industry and the confidentiality of patient information. *See, e.g.*, 45 C.F.R. §§ 164.504, 164.508 (2023). These are primarily competition and privacy laws, not laws for the protection of life or limb. *Weddle*, 2023 WL 8369786, at *2.

*Capiau* also mandates dismissal of Plaintiffs' negligence *per se* theory. In that case, in acknowledging "it is a closer call," the court allowed Plaintiffs' claims based upon the FTC Act to survive dismissal only because the plaintiffs were individuals engaged in the type of competitive conduct the FTC Act sought to protect, i.e. "an employee exchanges their labor and PII for employment compensation." 2024 WL 3747191, at *10. That is not the case here. This Court should follow *Weddle* and Plaintiffs' negligence *per se* theory should be rejected.

### 4. Plaintiffs' Breach of Implied Contract Claim Fails.

To prevail on a breach of implied contract claim, a plaintiff must show that (1) a valid contract existed between the parties, and (2) defendant breached the terms of that contract. *Supplee,* 239 N.C. App. at 216. A contract can arise absent explicit written agreement where an obligation is implied or presumed from the parties' acts. *Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593 (1980) ("The essence of any contract is the

18

mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.") The existence of an implied-in-fact contract is usually obvious from the circumstances. *Lannan v. Bd. of Governors of Univ. of N. Carolina*, 387 N.C. 239, 250, 913 S.E.2d 163, 172 (2025).

Here, Plaintiffs have failed to plausibly allege the existence of an implied contract between Plaintiffs and Compumedics ensuring Plaintiffs' data security. Moreover, even if Plaintiffs could allege the existence of such a contract, it would not be supported by consideration because Compumedics had pre-existing legal duties to provide the exact same obligations under federal law.

### a. Plaintiffs Have Not Pled the Terms of an Implied Contract Between Plaintiffs and Compumedics.

"Mutual assent requires the parties to "assent to the same thing, in the same sense." *Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc.*, 243 F. Supp. 2d 386, 400 (M.D.N.C. 2003) (quoting *Horton v. Humble Oil & Ref. Co.*, 255 N.C. 675, 122 S.E.2d 716, 719 (N.C. 1961) (internal quotation marks omitted). Where the parties' intent is not clear from a writing, it may be inferred from the parties' actions. *Se. Caissons, LLC v. Choate Const. Co.*, 247 N.C. App. 104, 784 S.E.2d 650, 655 (2016) (quoting *Branch Banking & Tr. Co. v. Kenyon Inv. Corp.*, 76 N.C. App. 1, 332 S.E.2d 186, 192 (1985)); *see also Arndt v. First Union Nat'l Bank*, 170 N.C.App. 518, 613 S.E.2d 274, 278 (N.C. Ct. App. 2005) (noting that the parties' intentions control construction of a contract, and their writings and actions can indicate their intentions).

Here, Plaintiffs do not plausibly allege the existence of any agreement between Plaintiffs and Compumedics, much less any mutual assent to any terms whatsoever. While Plaintiffs allege that Compumedics "promised and was obligated to (a) provide

medical devices and technology to Plaintiffs and Class Members; and (b) protect Plaintiffs' and Class Members' Private Information provided to obtain such products and/or created in connection therewith," and "[i]n exchange, Plaintiffs and Class Members agreed to provide Defendant with payment and their Private Information," (CAC ¶ 286) these allegations are entirely belied by Plaintiffs own allegations that they are "current and former patients of [Compumedics]'s healthcare-provider business associates and customers of [Compumedics]." *Id.* at ¶ 5. Plaintiffs curiously allege that as a condition of receiving healthcare services from their healthcare provider (not Compumedics), they had to give their personal information to Compumedics. *Id.* at ¶¶ 176, 187, 198, 209, 219, 229. There are no plausible, non-contradictory allegations of Plaintiffs directly interacting with Compumedics at all, and thus, there could not be any agreement or meeting of the minds between Plaintiffs and Compumedics related to data security (or any other subject for that matter).

Even if we assume that Plaintiffs at some point provided their personal information to Compumedics, which is implausible under the factual allegations, Plaintiffs do not allege specifically what Compumedics promised to do in the event of, or to protect against, an Incident, nor do they allege what they expected Compumedics to do. Instead, despite never interacting with Compumedics directly, Plaintiffs generically allege that they believed Compumedics's data security practices would be consistent with "industry standards and relevant laws and regulations, including the FTC Act, HIPAA, and HITECH." CAC ¶ 290. Plaintiffs, however, do not explain what "industry standard" data security practices entail. Nor do they explain how Compumedics failed to adhere to such "industry standards." *See, generally, id.*

The mere fact that Plaintiffs have pled that Compumedics was the victim of an Incident does not equate to a plausible allegation of the existence and breach of an implied contract for "industry standard" data security. *Vernon v. Trustees of Gaston College*, No. 23 CVS 3059, 2024 WL 3898620, at *8 (N.C. Super. Aug. 21, 2024) (finding no implied contract where the plaintiff alleged they entered into implied contract where the defendant agreed to safeguard their personal information and notify the plaintiff if their data was breached or otherwise compromised); *Lugo v. Inova Health Care Services*, No. 1:24-CV-700 (PTG/WEF), 2025 WL 905191, at *3 (E.D. Va. Mar. 25, 2025*)* ("Here, Plaintiff does not allege facts to show that custom dictates that the exchange of Plaintiff's private information for health services creates an implied-in-fact contract between the parties."); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-18 (8th Cir. 2017) ("The implied premise that because data was hacked Scottrade's protections must have been inadequate is a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss.") (quoting *Iqbal*, 556 U.S. 662 at 678); *see also id.* at 718 (dismissing breach of implied contract claim because the court was "left to guess how Scottrade failed to take 'industry leading' security measures."); *Griffey*, 562 F. Supp. 3d at 51-52 (same); *cf. Capiau*, 2024 WL 3747191, at *11 (denying motion to dismiss implied contract claim and noting that the court "grounds its decision to deny Defendant's 12(b)(6) motion as to Plaintiff's contract claim on the employer/employee family of cases").

Plaintiffs' breach of implied contract claim is merely based on an allegation that Compumedics was supposed to take some undefined action, based on some undefined implied contractual term, but somehow failed to do so. These conclusory allegations do not plausibly allege "mutual assent or a meeting of the minds on all essential elements or terms" necessary to form a binding contract as required by North Carolina law. *See*

*Carson v. Saito*, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971). Plaintiffs' breach of implied contract claim should therefore be dismissed.

### b. Plaintiffs' Breach of Implied Contract Claim Also Fails for Lack of Consideration.

Plaintiffs' breach of implied contract claim separately fails because they have not alleged adequate consideration. Under North Carolina law, consideration "consists of some benefit or advantage to the promisor, or some loss or detriment to the promisee." *Carolina Helicopter Corp. v. Cutter Realty Co.*, 263 N.C. 139, 147, 139 S.E.2d 362, 368 (1964).

Here, Plaintiff alleges that Compumedics had an implied contract to "safeguard and protect" Plaintiffs' personal information. CAC ¶ 283. But Plaintiffs identically allege that Compumedics had pre-existing legal duties to provide them these exact same obligations under federal law. *Id.* at ¶ 42 (citing duties under the FTC Act and HIPAA), ¶ 290 (same), ¶ 296 (same as to FTC Act). In other words, per Plaintiffs' own allegations, Compumedics was legally obligated to implement reasonable data security measures. Thus, even if Compumedics made these promises, they were nothing more than promises to abide by existing law—which is not a legally binding contract. *See, e.g., Bojorquez-Moreno v. Shores & Ruark Seafood Co.*, 92 F. Supp. 3d 459, 468 (E.D. Va. 2015) ("[A] party's agreement to do or refrain from doing something that it is already legally obligated to do or refrain from doing is not consideration.") (internal citation omitted). Plaintiffs' implied contract claim, accordingly, should be dismissed. *See Lugo*, 2025 WL 905191, at *3 (no consideration when allegations "explain" legal duties under  HIPAA)(internal citations omitted); *Griffey*, 562 F. Supp. 3d at 52-53 (no consideration without allegations that defendant "promised to act beyond the existing HIP[A]A mandates"; *In re Banner*

*Health Data Breach Litig.*, Case No. 2:16-cv-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (same).

### 5. <u>Plaintiffs' Breach of Third-Party Beneficiary Contract Claim Should be Dismissed.</u>

Plaintiffs allege that they and the proposed class members are "intended third-party beneficiaries" of contracts between their healthcare providers and Compumedics which were agreements to "provide medical devices and technology for diagnostic and research purposes." CAC ¶ 305. In furtherance of the agreement by Compumedics to provide these goods and services in exchange for compensation, CAC ¶ 305-306, Plaintiffs allege that Compumedics was required through "uniform" "Subscription Agreements" and "Business Associate Agreements" to "implement adequate data security measures" consistent with "statute and regulation, including but not limited to HIPAA and state consumer privacy and protections laws." *See* CAC ¶ 307-313. Given the "relevant statutes and regulations obligating Defendant to be required by contract to use reasonable data security" for Plaintiffs' information, Plaintiffs are intended beneficiaries of these contracts.

In North Carolina, contracts "must be construed strictly" against plaintiffs seeking enforcement as third-party beneficiaries. *In re Shearin Fam. Invs., LLC*, 418 B.R. 870, 877 (Bankr. E.D.N.C. 2009). The party claiming third-party beneficiary status has the burden to show that the provision was for their direct benefit. *Id.* Moreover, there must be "active and direct dealings" between the party allegedly benefiting and the parties to the contract before conferring third-party beneficiary status. *Edwards v. CSX Transportation, Inc.*, 684 F. Supp. 3d 443, 450 (E.D.N.C. 2023), *aff'd,* 150 F.4th 232 (4th Cir. 2025)(citing *Hospira Inc. v. Alphagary Corp.*, 194 N.C. App. 695, 703, 671 S.E.2d 7

(2009)). "It is not enough that the contract, in fact, benefits the third party, if, when the contract was made, the contracting parties did not intend it to benefit the third party directly." *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 622 (W.D.N.C. 2014)(citing *Hospira Inc.*, 671 S.E.2d at 13)(dismissing third party beneficiary claim because of no factual allegations that the parties entered into the contract or contracts at issue for the direct benefit of plaintiff).

Here, Plaintiffs fail to allege that they were the intended beneficiary of any contract between Compumedics and its clients. They allege only what amounts to a purchase contract between Compumedics and (unidentified) healthcare providers and "uniform" contracts such as the "Business Associate Agreement" that they alleged are required by law.[2] There are no allegations of "active and direct dealings" between Plaintiffs, their healthcare providers and Compumedics prior to the execution of any agreement. In fact, Plaintiffs have had no direct dealings with Compumedics. These allegations fall short of establishing that Plaintiffs were the intended beneficiary of any contract between their health care providers and Compumedics. *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 109 (D. Mass. 2021) (dismissing third-party beneficiary contract claim under Massachusetts law for lack of intent in data breach matter); *Willingham v. Glob. Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *19-20 (N.D. Ga. Feb. 5, 2013) (similar under Georgia law). Thus, while Plaintiffs may benefit in some manner, they are not entitled to sue for breach of contract as a matter of law.

### 6. <u>Plaintiffs' Unjust Enrichment Claims Should Be Dismissed.</u>

---

[2] While Plaintiffs allegedly quote exact language from these agreements, they do not attach them to their CAC nor cite where the documents can be accessed.

To prevail on their unjust enrichment claim, a plaintiff must show that "(1) benefits [were] conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enter., LLC*, 226 N.C.App. 483, 742 S.E.2d 555, 561 (N.C. Ct. App. 2013). This claim fails because Plaintiffs do not allege that they conferred a benefit upon Compumedics. To the contrary, Plaintiffs allege Compumedics "was contracted and paid by Plaintiffs' and Class Members' *healthcare providers*." CAC ¶ 322. This claim fails as a matter of law because Plaintiffs do not and cannot allege that Compumedics unjustly obtained or retained any money *from Plaintiffs*. Accordingly, Compumedics could not have been enriched at Plaintiffs' expense. *See Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC*, No. 17 CVS 11354, 2018 WL 562749, at *10 (N.C. Super. Ct. Jan. 24, 2018) (a plaintiff must plead that "both parties understood that services were rendered with the expectation of payment"); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 567 F. Supp. 3d 667, 688 (D.S.C. 2021) (dismissing claim where plaintiffs did not "chose to utilize" nor "paid for" nor "directly provided" their information to defendant). This claim should be dismissed.

## III.  **CONCLUSION**

For the reasons stated above, Compumedics respectfully requests that the Court grant this motion and dismiss Plaintiffs' Complaint in its entirety without leave to amend.

Dated: September 26, 2025     Respectfully submitted,


<u>s/ Mark R. Kutny</u>
Mark R. Kutny, N.C. State Bar No. 29306
HAMILTON STEPHENS STEELE +
MARTIN, PLLC
525 N. Tryon St., Fl. 1400
Charlotte, NC 28202
Telephone: 704.344.1117
mkutny@lawhssm.com

Carrie Dettmer Slye (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
Telephone: 513.929.3400
cdettmerslye@bakerlaw.com

Raika N. Casey (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80209
Telephone: 303.764.4093
rcasey@bakerlaw.com

*Attorneys for Defendant Compumedics USA*

26

## CERTIFICATION UNDER USE OF ARTIFICIAL INTELLIGENCE LOCAL STANDING ORDER

Pursuant to this Court's Local Standing Order referenced as Docket No. 3:24-mc-104 related to the usage of artificial intelligence platforms (AI) in connection with the submission of briefs and other filings before this Court, the undersigned hereby certifies that he has adhered to this Court's requirements regarding the usage of AI. Specifically, no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources; and every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: September 26, 2025

*s/ Mark R. Kutny*
Mark R. Kutny, N.C. State Bar No. 29306
HAMILTON STEPHENS STEELE + MARTIN, PLLC
525 N. Tryon St., Fl. 1400
Charlotte, NC 28202
Telephone: 704.344.1117
mkutny@lawhssm.com

Carrie Dettmer Slye (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
Telephone: 513.929.3400
cdettmerslye@bakerlaw.com

Raika N. Casey (admitted *pro hac vice*)
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, Colorado 80209
Telephone: 303.764.4093
rcasey@bakerlaw.com

*Attorneys for Defendant Compumedics USA*